# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| AGRIPROCESSORS, INC., ) | |
| ) | Bankruptcy No. 08-2751 |
| Debtor. ) | |
| ) | |
| JOSEPH E. SARACHEK, in his ) | |
| Capacity as Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 10-09186 |
| ) | |
| v. ) | |
| ) | |
| PINCHOS HASOFER, INC., ) | |
| ) | |
| Defendant. ) | |

## TRIAL ORDER

Trial was held in this case on February 13, 2012. Desiree A. Kilburg represented Plaintiff, Joseph E. Sarachek, in his capacity as Chapter 7 Trustee for Debtor, Agriprocessors, Inc. Defendant, Pinchos Hasofer, Inc. did not appear, nor did counsel appear on its behalf. The Court took the matter under advisement. This is a core proceeding under 11 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

## STATEMENT OF THE CASE

Trustee seeks to recover fraudulent conveyances and/or preferential transfers from Debtor, Agriprocessors, Inc., to Defendant, Pinchos Hasofer, Inc. Other than

one letter, which the Court construed as an Answer to the Complaint, and participation in one telephonic conference, Defendant has not defended this action. Defendant did not appear for trial. Plaintiff presented his evidence and argument. For the following reasons, the Court finds that Plaintiff has proven his fraudulent conveyance claim under 11 U.S.C. § 548.

## BACKGROUND

The Chapter 7 Trustee, Joseph Sarachek, brought this adversary case seeking to set aside fraudulent conveyances under 11 U.S.C. § 548, or preferential transfers under 11 U.S.C. § 547(b). Plaintiff sought to recover $66,409.00 received by Defendant from Debtor.

Plaintiff served the Summons and Complaint on Defendant by "Regular, first class United States mail, postage fully pre-paid" on November 8, 2010. On December 3, 2011, Defendant filed a letter (dated December 2, 2010) addressed to the Clerk of Court. The letter stated:

> In response to the notice/claim made to our company, to the best of our knowledge this claim is meritless.
> We respectfully request an extension of time to properly defend ourselves.
> A request has been submitted to the plaintiffs' attorney to produce to us copies of [the] front and back of all alleged checks.

(12/2/10 Letter, ECF Doc. No. 3.) With the letter Defendant also filed a copy of a letter addressed to counsel for Plaintiff, stating: "Regarding the alleged payments made [to] us by Agri Processors, we hereby request you submit to our attention

2

within 10 days copies of [the] front and back of all 14 checks." (Id.)  The Court treated Defendant's letter to the Clerk of Court as an Answer to the adversary Complaint.

The Court held a scheduling conference on December 20, 2010.  Desiree Kilburg appeared on behalf of Plaintiff.  Defendant did not appear through counsel.  Instead, the Court permitted Moshe Klein, Defendant's Vice President, to handle the call for Defendant.  There was no indication during the conference that Defendant planned to obtain counsel.

Mr. Klein stated that Defendant had received copies of the checks requested in the December letter to Plaintiff's counsel, which was also filed with the Court.  Mr. Klein stated Defendant sold religious goods to the Rubashkin family.[1]  He referred the Court and Plaintiff's counsel to its company website, www.esofer.com, indicating that it sold religious items.  He indicated that he had evidence to support the assertion that the payments received were for value given.

After taking input from both Plaintiff and Defendant, the Court entered a scheduling order that set the deadline for completion of discovery and other deadlines.  The Court sent the Order to Defendant at the address provided to the Court, 321 Kingston Avenue, Brooklyn, New York.

---

[1] As discussed in prior opinions of the Court, the Rubashkin family owned and operated Agriprocessors prior to its bankruptcy.

On May 19, 2011, Plaintiff filed a Motion for Extension of Time to file the pre-trial statement. The Motion indicated that Defendant consented and the Court entered an order on May 20, 2011. The order was sent by first-class mail to Defendant. On July 18, 2011, Plaintiff filed a second Motion for Extension of Time to file the pretrial statement, indicating that the parties were "continuing their efforts to reach a resolution of the proceeding that may obviate the need to file a pretrial statement." (7/18/11 Motion, ECF Doc. No. 12, at 1.) The Court granted the Motion on July 19, 2011. The order granting the Motion was again sent by first-class mail to Defendant.

On September 2, 2011, Plaintiff's counsel filed a pre-trial statement. Plaintiff's counsel indicated she had contacted Defendant concerning its portion of the pretrial statement, but had not received a response. The Court filed an order setting a trial-scheduling conference. This order was mailed by first-class mail to Defendant. Counsel for Plaintiff appeared on the telephone scheduling conference on October 7, 2011. No one appeared for Defendant. Plaintiff's counsel indicated their office had attempted to contact Defendant several times, to no avail. The Court re-set the trial-scheduling conference for October 21, 2011, to give Defendant another opportunity to participate in the conference. This order was sent to Defendant by first-class mail on October 14, 2011.

On October 21, 2011, the rescheduled date for the hearing, Plaintiff's counsel appeared. No representative for Defendant appeared or participated. Plaintiff's counsel indicated she had attempted to contact Defendant, but Defendant's answering machine indicated the business was closed in observance of the Jewish holiday. The Court took the holiday into consideration and again rescheduled the telephonic conference.

On November 4, 2011, the Court held the trial-scheduling conference. Plaintiff's counsel again appeared. Defendant did not appear. Plaintiff's counsel indicated she had sent copies of the Court's orders and letters to Defendant explaining that the telephonic hearing would be held, and trial set, even if Defendant did not choose to participate. The Court set trial for Monday, February 13, 2012. In the order, the Court indicated that in addition to regular service of the order, Plaintiff should also continue to attempt to contact Defendant to make it aware of the trial date. The order was sent to Defendant by first-class mail at its last known address. The Court received no contact from Defendant.

On January 30, 2012, Plaintiff filed an exhibit list and a certificate of service indicating he had sent the exhibit list to Defendant. On February 13, 2012, Desiree Kilburg appeared on behalf of Plaintiff for trial. No representative for Defendant appeared. Plaintiffs' counsel was in contact with Defendant's representative a couple of times after the December 20, 2010 scheduling conference—the last time

5

anyone for Defendant appeared for a court proceeding. Plaintiff's counsel requested any documentation Defendant had which showed the transfers had been made for value. Defendant stated it had no documentation. Plaintiff's counsel indicated she was unable to reach Defendant after that.

The Court proceeded with the trial. Plaintiff offered five (5) exhibits which were admitted without objection. Plaintiff argues the exhibits prove the case-in-chief. Included in these exhibits was an affidavit from Marc Ross, Plaintiff's expert. The Court created a Proceeding Memo and filed it and sent it to Defendant on March 10, 2012. Defendant has not contacted the Court.

## CONCLUSIONS OF LAW

Trustee seeks to recover $66,409.00 from Defendant as either a fraudulent conveyance or an avoidable preferential transfer. The Court concludes that the evidence presented by Plaintiff proves that a large portion of the money was fraudulently conveyed to Defendant under 11 U.S.C. § 548(a)(1)(B)(ii)(I). The Court also concludes Plaintiff did not present sufficient evidence to support a preference recovery.

**A. Fraudulent Conveyance**

Section 548 of the Bankruptcy Code, entitled "Fraudulent transfers and obligations," provides in part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an

6

>   interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>> (B)(i) **received less than a reasonably equivalent value in exchange for such transfer or obligation**; and
>> (ii) (I) **was insolvent on the date that such transfer was made or such obligation was incurred**, or became insolvent as a result of such transfer or obligation;
>> (II) was engaged in business or a transaction or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
>
>   . . . .

11 U.S.C. § 548(a)(1) (emphasis added).

"The language of Section 548 regarding fraudulent transfers is clear that there are different ways in which such transfers can occur. One alternative is that a transfer [has] been made when the debtor was insolvent." In re TransTexas Gas Corp., 597 F.3d 298, 308 (5th Cir. 2010) (citing 11 U.S.C. § 548(a)(1)(B)(ii)(I)). "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer."

7

Universal Church v. Geltzer, 463 F.3d 218, 226 (2d Cir. 2006) (citing 11 U.S.C. § 101(32)(A); In re Centennial Textiles, Inc., 220 B.R. 165, 174 (Bankr. S.D.N.Y. 1998); In re Durso Supermarkets, Inc., 193 B.R. 682, 701 (Bankr. S.D.N.Y. 1996)). Section 101(32)(A) of the Bankruptcy Code defines "insolvent" as a:

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title . . . .

11 U.S.C. § 101(A).

> In order to prevail in a fraudulent conveyance action, a plaintiff must establish by a preponderance of the evidence either one of the following: (1) that the debtor made the transfer in question while it was insolvent, or became insolvent because of the transfer; or (2) that the debtor was operating its business after the transfer with an unreasonably small amount of capital.

In re Prime Realty, Inc., 380 B.R. 529, 536 (B.A.P. 8th Cir. 2007).

The plaintiff must also prove that reasonably equivalent value was not exchanged. "The question of reasonable equivalence is 'largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.'" TransTexas Gas Corp., 597 F.3d at 306 (quoting In re Dunham, 110 F.3d 286, 289 (5th Cir. 1997)).

> To measure reasonably equivalent value, we judge the consideration given for a transfer from the standpoint of creditors. In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000). 'The proper focus is on the net

8

> effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors.' Id.

Id. "Further, 'reasonably equivalent value' means that 'the debtor has received value that is substantially comparable to the worth of the transferred property.'"

Id. (quoting BFP v. Resolution Trust Corp., 511 U.S. 531, 548 (1994)).

Plaintiff's Exhibit 4, the expert report of Marc B. Ross, states in part:

> The purpose of this report is to provide an opinion as to the estimate of value of Agriprocessors, Inc. (The "Company", "Agriprocessors"), and whether Agriprocessors was solvent during the two years prior to the Bankruptcy Filing Date, November 4, 2008, (the "Valuation Period").
> 
> . . . . At all times during the Valuation Period, Agriprocessors was experiencing both cash flow and balance sheet insolvency. The analysis highlighted within this report shows that during the Valuation Period, Agriprocessors was unable to meet its debts as they came due, and while additional credit was at times extended by its primary secured lenders, First Bank and Metropolitan Life Insurance Company, and its vendors and other third parties, the anticipated cash flows of the business would never be sufficient to relieve the Company's debt burden to these creditors. Thus, from an operating perspective, the Company was cash flow insolvent. Additionally, the fair value of the assets of the Company were insufficient to cover the Company's liabilities, thus, from a balance sheet perspective, the Company was insolvent.

(Plaintiff Exh. 12, at 2.) Mr. Ross's report further found that based on his valuation report and the estimates of value of Agriprocessors on the Valuation Dates (June 27, 2008; July 29, 2007; December 29, 2006; and June 30, 2006), the value of Agriprocessors was "between $26,700,000 and $30,330,000." (Id. at 1.) "Based upon these estimates of value, the value of the sole stockholder's equity

9

shares was $0 as of June 27, 2008, July 29, 2007 and December 29, 2006, and between $996,000 and $1.6 million as of June 30, 2006." (Id.)

Plaintiff's Exhibit 1 includes copies of checks from Agriprocessors to Defendant. These checks, along with Agriprocessors' bank records, show that between July 17, 2006, and March 6, 2008, Agriprocessors wrote 14 checks to Defendant totaling $66,409.00.

Debtor filed for bankruptcy protection on November 4, 2008. Accordingly, under § 548, amounts conveyed within two years of the date of the petition filing, after November 4, 2006, could be subject to § 548. Plaintiff appears to be attempting to recover two (2) checks totaling $10,000, that fall outside the two (2) year period. The checks are dated July 17, 2006, and July 24, 2006. The July 17, 2006 check was cashed on November 14, 2006. The July 24, 2006 check was cashed on November 24, 2006. Plaintiff presented no evidence to indicate these checks were pre-dated.

> Generally, a debt is incurred when a debtor becomes legally obligated to pay. E.g., FCC v. NextWave Pers. Communications (In re NextWave Pers. Communications), 200 F.3d 43, 56 (2d Cir. 1999). A debtor becomes obligated to pay principal indebtedness under a promissory note on the date the note is executed and delivered. E.g., id. at 56-57.

In re Galbreath, 286 B.R. 185, 198 (Bankr. S.D. Ga. 2002); see In re Emerald Oil Co., 695 F.2d 833, 837 (5th Cir. 1983); Barash v. Pub. Fin. Corp., 658 F.2d 504, 522 (7th Cir. 1981).

> While the Bankruptcy Code is silent on the question of when a debt or obligation is 'incurred,' courts have not questioned that an 'obligation' to pay principal indebtedness under a promissory note is 'incurred' on the date the note is executed and delivered. E.g., In re Iowa Premium Service, 695 F.2d 1109, 1111-12 (8th Cir. 1982); In re Smith-Douglass, Inc., 842 F.2d 729, 730 (4th Cir. 1988); In re Pippin, 46 B.R. 281, 283-84 (Bankr. W.D. La. 1984) (holding that, for preference purposes, debtor becomes legally obligated to pay under installment payment contract when contract is executed).

In re NextWave Personal Commc'n, Inc., 200 F.3d 43, 56 (2d Cir. 1999) (quotation omitted). "Cases interpreting § 547(c)(2) hold that a debt is incurred on the date upon which the debtor first becomes legally bound to pay, a conclusion with which we agree." In re Iowa Premium Serv. Co., Inc., 695 F.2d at 1111 (citing Barash, 658 F.2d at 512; In re Ken Gardner Ford Sales, Inc., 10 B.R. 632, 647 (Bankr. E.D. Tenn. 1981); In re McCormick, 5 B.R. 726, 731 (Bankr. N.D. Ohio 1980)).

This interpretation is further supported by the Uniform Commercial Code and the Iowa Code:

> The issuer of a note or cashier's check or other draft drawn on the drawer is obligated to pay the instrument (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (ii) if the issuer signed an incomplete instrument, according to its terms when completed, to the extent stated in sections 554.3115 and 554.3407. The obligation is owed to a person entitled to enforce the instrument or to an endorser who paid the instrument under section 554.3415.

Iowa Code § 554.3412.

Check # 115833 was dated July 17, 2006, and check # 115834 was dated July 24, 2006. Debtor thus became legally bound to pay them in July 2006. See In re Iowa Premium Serv. Co., Inc., 695 F.2d at 1111; In re Galbreath, 286 B.R. at 198. This obligation was incurred more than two years prior to the bankruptcy filing and is not a fraudulent transfer under § 548. See 11 U.S.C. § 548(a)(1).

Although these amounts do not qualify as fraudulent conveyances under § 548, the remaining checks totaling $56,409.00 constitute fraudulent conveyences under the record before this Court. The evidence shows that Debtor received less than a reasonably equivalent value in exchange for the transfers. Mr. Ross's affidavit states that as far as he was aware, "no new value or consideration [was] advanced by the Defendant in exchange for the payments." (Plaintiff Exh. 5.) No contrary evidence has been produced. The Court finds Defendant provided no evidence of new value or consideration in exchange for the transfer. Consequently, Trustee has satisfied the requirement that Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." See In re Trans Texas Gas, 597 F.3d at 306.

Mr. Ross's report also is sufficient evidence to establish that Debtor was insolvent at the time that each of these transfers was made. (See Ross Report, Plaintiff Exh. 12, at 2.) Plaintiff has proven fraudulent transfers under 11 U.S.C. § 548(a)(1)(B)(ii)(I), from Debtor to Defendant in the amount of $56,409.00.

**B. Preferential Transfer**

The Complaint also alleges, in the alternative, that the transfers were avoidable preferential transfers under 11 U.S.C. § 547(b). Plaintiff has already proven that twelve (12) of the fourteen transfers were avoidable as fraudulent transfers. The Court will thus address only whether the remaining transfers (checks #115833; #115834) could qualify as preferential transfers under § 547(b). Section 547(b) provides:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
> (1)   To or for the benefit of a creditor;
> (2)   For or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)   Made while the debtor was insolvent;
> (4)   Made –
>     (A)   On or within 90 days before the date of the filing of the petition; or
>     (B)   Between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5)   That enables such creditor to receive more than such creditor would receive if –
>     (A)   The case were a case under chapter 7 of this title;
>     (B)   The transfer had not been made; and
>     (C)   Such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

> Section 547 serves two purposes. First, by permitting the trustee to avoid transfers made in the ninety days before bankruptcy, creditors are discouraged from a race to the courthouse during the slide into bankruptcy. Danning v. Bozek (In re Bullion Reserve of N. Am.),

836 F.2d 1214, 1217 (9th Cir. 1988), cert. denied, 486 U.S. 1056 (1988). Second, it furthers the prime policy of the Bankruptcy Act of an equal distribution of the debtor's assets among similarly situated creditors. Id. The trustee may avoid the transfer of a debtor's property to a creditor that diminishes the bankruptcy estate or creates inequality among creditors, if the debtor was insolvent and the transfer was made within ninety days of the filing of the bankruptcy petition. Stevenson v. Leisure Guide of Am., Inc. (In re Shelton Harrison Chevrolet, Inc.), 202 F.3d 834, 837 (6th Cir. 2000).

Velde v. Kirsch, 543 F.3d 469, 472 (8th Cir. 2008).

Without reviewing all the factors of § 547(b), the Court finds that neither check # 115833 nor check # 115834 were transferred within ninety (90) days of the filing of bankruptcy. See id. Further, no evidence was presented to suggest that Defendant was an insider. Accordingly, Plaintiff has not established a right to relief under § 547(b) for the remaining checks.

**WHEREFORE**, judgment in the amount of $56,409.00 shall be entered in Plaintiff's favor and against Defendant.

Dated and Entered: May 23, 2012

_____
**THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE**